JLW USAO#2024R00331

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ADAM RUNDLE,<br><br>Defendant. | *<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* | CRIMINAL NO. ABA26CR386<br><br>(Securities Fraud, 15 U.S.C. §§ 78j(b), 78ff and 17 C.F.R. § 240.10b(5); Forfeiture, 18 U.S.C. § 981(a)(1)(C), 21 U.S.C. § 853(p), 28 U.S.C. § 2461(c)) |

********

**INFORMATION**

**COUNT ONE**
**(Securities Fraud)**

USDC- GREENBELT
'26 OCT 30 PM4:00

The United States Attorney for the District of Maryland charges that:

**Introduction**

At times relevant to this Information:

1. Defendant **ADAM RUNDLE ("RUNDLE")** was a resident of Annapolis, Maryland.

2. CleverProfits LLC ("CleverProfits") was a business offering external chief financial officer and financial advisory services for businesses. CleverProfits had an office in Annapolis, Maryland.

3. Robinvest LLC ("Robinvest") was a Maryland LLC created and controlled by **RUNDLE**.

4. Victim A.K. was a resident of Texas and a client of CleverProfits.

5. Wealth Management Firm 1 was a wealth management and investment advisory company with an office in Annapolis, Maryland. Wealth Management Firm 1 had employees, revenues, and customers.

6. Victim T.B. was a resident of Annapolis, Maryland. Victim T.B. was a registered investment adviser representative. He was employed by Wealth Management Firm 1.

7. U.S. Small Business Administration ("SBA") was a federal government agency that provided support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy by supporting the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

8. The Economic Injury Disaster Loan ("EIDL") program was a federal relief loan program administered by the SBA. Under the EIDL program, small businesses and certain other entities that suffered substantial economic injury as a result of a declared disaster could obtain low interest rate loans.

**<u>The Scheme to Defraud</u>**

9. From in or about November 2021 to in or about January 2024, in the District of Maryland and elsewhere, the defendant,

**ADAM RUNDLE,**

knowingly devised and intended to devise a scheme and artifice to defraud Victim A.K. to obtain money by means of materially false and fraudulent pretenses, representations, and promises, and in furtherance of the fraudulent conduct, knowingly used a means of communication in interstate commerce.

**<u>Object of the Scheme to Defraud</u>**

10. It was the object of the scheme to defraud for **RUNDLE** to personally enrich

himself by persuading Victim A.K. to invest money with Robinvest by claiming Robinvest would reinvest Victim A.K.'s earnings for a profit, when in fact, **RUNDLE** controlled Robinvest and intended to use, and did use, Victim A.K.'s funds for his own personal use and benefit.

**Manner and Means of the Scheme to Defraud**

It was part of the scheme to defraud that:

11. In or about November 2021, **RUNDLE** filed business registration documents with the State of Maryland to create Robinvest. Those documents listed **RUNDLE** as the sole resident agent.

12. In or about November 2021, **RUNDLE** created an email account with the domain name "@B.Partners.com" in the name of Victim T.B. Victim T.B. had no knowledge of Robinvest and had never created, owned, or worked for B. Partners. B. Partners did not exist as an operating entity.

13. In or about November 2021, **RUNDLE** created an email account with the domain name "@B.Partners.com" in the name of "Sue Anderson." "Sue Anderson" was a fictitious identity that **RUNDLE** created and controlled that purported to be the assistant of Victim T.B.

14. In or about November and December 2021, **RUNDLE** touted Robinvest as a safe and conservative fund to invest money.

15. In or about November and December 2021, **RUNDLE** advised Victim A.K. to apply for business funding through the SBA's EIDL program.

16. In or about November and December 2021, **RUNDLE** advised Victim A.K. to invest the majority of the loan proceeds in Robinvest.

17. In or about December 2021, **RUNDLE** created a bank account at Capital One Bank ending in 3903 in the name of Robinvest ("Capital One 3903"). **RUNDLE** was the sole signatory

on the account.

18. On or about December 22, 2021, **RUNDLE** sent an email from his CleverProfits email account introducing Victim A.K. to the email account created through the "Sue Anderson" alias. **RUNDLE** explained that Victim A.K. was "likely to get a large SBA loan" and that Victim A.K. was "interested in the Robinvest fund."

19. On or about December 31, 2021, **RUNDLE** emailed Victim A.K., posing as "Sue Anderson." **RUNDLE** attached a false and fraudulent Robinvest prospectus to that email. The prospectus stated that "Robinvest will invest available funds alongside [Wealth Management Firm 1] into the [Wealth Management Firm 1] MSCI USA Index Fund. The MSCI USA Index has offered significant returns over the last 3 years, while maintaining a conservative risk profile." The prospectus further stated that Wealth Management Firm 1 "has agreed to guarantee a minimum rate of return of 4% to all investments made by Robinvest into the [Wealth Management Firm 1] MSCI USA Index Fund."

20. On or about December 31, 2021, **RUNDLE**, posing as "Sue Anderson," emailed a "Simple Agreement for Future Equity" to Victim A.K. That agreement provided that in exchange for Victim A.K.'s $1.5 million investment, Robinvest would issue to Victim A.K. "the right to certain shares of [Robinvest's] Capital Stock," subject to certain terms. It further provided that Robinvest would: (1) "return the purchase amount, plus a guaranteed return of 4% (compounded annually)," and (2) "invest funds according to [Robinvest's] investment prospectus."

21. On or about January 4, 2022, Victim A.K., relying on **RUNDLE's** false statements and misrepresentations, electronically signed the Simple Agreement for Future Equity.

22. On or about January 10, 2022, Victim A.K.'s business bank account received $1.7 million in EIDL funds from the SBA.

23. On or about January 10, 2022, Victim A.K. sent three wire transfers of $500,000 each into Robinvest's Capital One 3903 account. These were the first funds received by the Capital One 3903 account.

24. On or about January 13, 2022, **RUNDLE** signed the Simple Agreement for Future Equity using Victim T.B.'s name.

25. Between January 2022 and January 2024, **RUNDLE** diverted funds from Capital One 3903 to other bank accounts he controlled. **RUNDLE** then used the funds for personal cryptocurrency investments, credit card payments, travel expenses and other personal expenses.

26. Posing as Victim T.B., **RUNDLE** sent investment statements to Victim A.K., which falsely and fraudulently stated that Victim A.K.'s "investment" in Robinvest had increased in value.

27. In or about November 2022, when asked by Victim T.B. whether **RUNDLE** knew about Robinvest, **RUNDLE** falsely stated that Robinvest was a CleverProfit's client.

## THE CHARGE

28. From at least in or about November 2021 to in or about January 2024, within the District of Maryland and elsewhere, the Defendant,

**ADAM RUNDLE,**

did knowingly and willfully, directly and indirectly, by use of the means and instrumentalities of interstate commerce, in connection with the purchase and sale of a security, use and employ, manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal Regulations, Section 240.10b.5 by: (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to

make the statement made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon a person, to wit: **RUNDLE** made material false statements and executed a scheme to defraud Victim A.K. in connection with an investment in Robinvest, and misappropriated Victim A.K.'s funds.

15 U.S.C. §§ 78j(b), 78ff & 17 C.F.R. § 240.10b(5)

## FORFEITURE ALLEGATION

1. Pursuant to Federal Rule of Criminal Procedure 32.2, notice is hereby given to the defendant that the United States will seek forfeiture as part of any sentence in accordance with 18 U.S.C. § 981(a)(1)(C), 21 U.S.C. § 853(p), and 28 U.S.C. § 2461(c), in the event of the defendant's conviction on the offense charged in this Information.

2. Upon conviction of the offense set forth in this Information, the defendant,

**ADAM RUNDLE,**

shall forfeit to the United States, pursuant to 18 U.S.C. § 98l(a)(l)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense(s), including but not limited to a forfeiture money judgment equal to the value of the proceeds the defendant obtained as a result of the offense, which is $1,500,000.

## SUBSTITUTE ASSETS

3. If, as a result of any act or omission of the defendant, any such property subject to forfeiture,

a. cannot be located upon the exercise of diligence;

b. has been transferred, or sold to, or deposited with a third person;

c. has been placed beyond the jurisdiction of the Court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be subdivided without difficulty,

the United States shall be entitled to forfeiture of substitute property up to the value of the forfeitable property described above pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c).

18 U.S.C. § 981(a)(1)(C)
21 U.S.C. § 853(p)
28 U.S.C. § 2461(c)

Kelly O. Hayes GLW

KELLY O. HAYES
United States Attorney